## O'ROURKE v ROCK

Ohio Appeals, 9th Dist, Summit Co

No 2995. Decided April 8, 1938

Falkner & Dotson, Akron, for appellee.

W. E. Pardee, Akron. and Spicer & Spicer, Akron, for appellant.

## OPINION

By DOYLE, J.

This suit was commenced in the Court of Common Pleas of Summit county by John S. O'Rourke, plaintiff. He prayed for a judgment against the defendant, Anthony Rock, in the sum of $6,339, and alleged, as a ground for recovery, the failure of the defendant, Rock, to pay a promissory note executed by the said Rock, and made payable to H. G. Haynes, as guardian of this plaintiff, O'Rourke.

The defendant admitted the execution and delivery of the note, and alleged that to secure the note he executed and delivered to the said H. G. Haynes, guardian, a mortgage deed to certain real estate.

He further pleaded that the note and mortgage represented the total purchase price of the real estate described in the mortgage, which real estate had been deeded to him by one Arlin M. Klein; that it had been represented to him that the real estate was owned by Haynes but that the record title was in the name of his daughter, the said Arlin M. Klein, and that the same was free and clear of all encumbrances, with the single exception of a gasoline station lease thereon; and that in taking the deed from the grantor Klein; and giving the note and mortgage, he relied upon the representations made to him and believed them to be true.

The defendant further pleaded that the property was encumbered by liens, and that neither H. G. Haynes in his individual capacity, H. G. Haynes as guardian of O'Rourke, nor Arlin M. Klein had clear legal title to the real estate as represented, and that in a subsequent proceeding in the Court of Common Pleas of Summit county, Ohio, in which Rock, O'Rourke, Haynes and Klein were parties, it was there determined that the real estate in question was not the property of Arlin M. Klein; that neither O'Rourke nor his guardian had any interest in it, and that they be forever barred from asserting any title thereto; that the property was sold on execution, free and clear of all claims of Anthony Rock, Arlin M. Klein and John S. O'Rourke, and the proceeds of the sale applied on the personal indebtedness of H. G. Haynes to the Central-Depositors Bank and Trust Co., his judgment creditor.

It was therefore claimed that there

was no consideration for the note; that the defendant received nothing by reason of the conveyance of the said real estate, and that neither the plaintiff nor his guardian suffered any detriment at the time the said note and mortgage were given.

The trial resulted in a judgment for the plaintiff for the full amount of the note, and appeal by the defendant on questions of law and fact brings the cause before this court. The sole question here presented is whether or not the evidence adduced is sufficient to establish a defense to the note, the execution of which was admitted.

The evidence discloses that H. G. Haynes, as guardian of the appellee, O'Rourke, had diverted certain funds belonging to his ward's estate to other uses than were lawfully permitted. It may be properly inferred from the evidence that he had embezzled these funds; and the day of reckoning when Haynes would be called upon to explain to the Probate Court his administration of the trust was drawing close. He at this time was president of the Kenmore Banking Co.

Anthony Rock, a business man in the Kenmore district, and one of the Kenmore Banking Company's largest depositors, was called into the bank one evening by Haynes and requested to purchase the property involved in this controversy. Rock, in his testimony, speaks as follows of this meeting: "I recall distinctly that Harry Haynes represented to me the facts that he had to show for an account of O'Rourke that he was guardian of, and that he couldn't raise the necessary funds cash, and he wanted me to buy this real estate that the gasoline station was on, which was in the Kenmore district, and which is an ideal location for various purposes of business, and at the same time he was negotiating for the sale of this property, and he wanted to sell me this property for the amount of $6300, and this property was free from any indebtedness whatsoever, and it had a monthly income of fifty dollars per month, and that the title was

in his daughter's name (Arlin Klein), and the deed would be given to me free from any indebtedness whatsoever on condition that I would for the life of the lease have the fifty dollars go at his direction as he ordered me to do so, and I just made the purchase."

Pursuant to this conversation, Rock accepted a warranty deed to the premises and gave the note and mortgage on the premises to Haynes, as guardian of O'Rourke, which were placed among the assets of the estate. The note and mortgage constituted the entire purchase price of the property.

The evidence further shows that on the 18th day of September, 1924, this real estate, which was then owned by the Akron Realty Co., was conveyed by the said realty company by quit-claim deed to Harry Haynes; that on the 15th day of March, 1928, the same realty company gave a quit-claim deed of this same property to Arlin Klein, daughter of Harry Haynes; that both of these deeds were recorded on or near their respective dates of execution; that on the 18th of April, 1929, a judgment was taken by the Kenmore Banking Co. against Harry Haynes on his personal indebtedness to the bank, and on the 13th day of June, 1929, the bank levied an execution against this property on said judgment; that on the 29th day of June, 1929, Arlin Klein gave to Anthony Rock the warranty deed referred to heretofore, conveying to him the property in question, free and clear from all encumbrances with the single exception of a gasoline station lease; that coincident with the execution and delivery of the warranty deed, Rock executed the promissory note involved in this case, and a mortgage on the property to secure the said note; that the note was in the amount of $6,339, bearing interest at the rate of six percent per annum, and was due one year after the date of its execution; that prior to the due date of the note, H. G. Haynes was discharged as guardian of O'Rourke, and one E. E. Kime was appointed by the Probate Court as successor guardian; that at about the time of the appoint-

ment of Kime as successor guardian of O'Rourke, the Central-Depositors Bank and Trust Co. was appointed guardian for H. G. Haynes, and, as such guardian of H. G. Haynes, endorsed, for and on behalf of its guardian, who in turn was the guardian of John O'Rourke, the note in question to E. E. Kime, the successor guardian of John S. O'Rourke; that on the 8th day of June, 1932, the said note was delivered to the plaintiff in this action, he having at that time arrived at the age of majority; that on the 17th of December, 1932, the Court of Common Pleas of Summit county, Ohio, determined that the judgment which had been obtained by the Kenmore Banking Co. against Harry G. Haynes, as an individual, was the first and best lien on the premises which are a part of this controversy, and specifically found that John S. O'Rourke, and E. E. Kime as guardian of John S. O'Rourke, both of whom were parties to said action, "and all others claiming under or through them or either of them, have no interest in the premises * * * and they and each and every person claiming by or through them are hereby forever barred from claiming any interest whatsoever in the premises * * * "; and that the court further ordered and directed that certificates issue "to cancel of record the mortgage given by Anthony Rock to Harry G. Haynes, guardian of John S. O'Rourke * * * ."

The evidence further discloses that this property, following the court proceedings mentioned above, was sold free and clear of any interest of the appellant and the appellee herein, and that the mortgage given by this appellant, to secure the note given by him, which represented the entire purchase price of the property, was cancelled of record.

The evidence further discloses that the successive transfers of this note from the guardian Haynes to the guardian Kime, and from the latter to the appellee, O'Rourke, after he attained his majority, were transfers by operation of law, and not in the usual course of business, and that at no time was

any consideration given for such transfers.

In applying the applicable legal principles to the foregoing facts, it is expedient to first determine whether the appellee is a holder in due course of the instrument, because, if he is such a holder, the plea of absence or failure of consideration cannot avail.

**Sec. 8133, GC.,** provides:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course * * * ."

And §8157, GC., provides:

"One is a holder in due course who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it previously had been dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The successive transfers of this note from Haynes, guardian, through Kime, guardian, and into the hands of O'Rourke after he reached his majority, were, as stated above, transfers by operation of law, and without consideration, and neither Kime, as guardian, nor O'Rourke were holders in due course within the meaning of the negotiable instrument act. They acquired no better title than that which could be claimed by Haynes, guardian, the payee. A ward, who, upon reaching his majority, comes into possession, by transfer from his guardian, of a promissory note which was an asset of his estate, takes the note subject to the same defenses which could be in-

terposed against the guardian payee.

It is urged in argument and brief that although the real property consideration for the giving of the note had failed, yet other consideration existed. That by analogy the reasoning of **Mathews, Admr. v Meek, et, 23 Oh St 272**, is dispositive of that point in this case. While the members of this court agree with the conclusions reached by the Supreme Court in that case, we are unable to see the controlling application of that case to the facts in this case.

Here the ward's estate suffered no detriment at the hands of Rock or of any one through him. There was no independent contract which could supply consideration, as in the case of Mathews, Admr., v Meek, et al, supra. And, further, in that case, the administrator's estate suffered a detriment to the extent of thousands of dollars which had been directly insured by the bond of the contractor and his sureties.

In this case, the evidence shows no consideration for the note and mortgage other than the conveyance of the lot to O'Rourke, and that consideration failed entirely. Under such circumstances such failure constitutes a defense to an action on the note.

7 Am Jur., Bills and Notes, Sec. 253.

This action being an appeal on questions of law and fact, a judgment in favor of Rock and dismissing the appellee's petition will be entered.

STEVENS, PJ, and WASHBURN, J, concur.